## IN THE COURT OF COMMON PLEAS OF GREENE COUNTY, OHIO
## SUMMONS

SUSAN PETERIE
    Plaintiff,

vs.

LEIDOS INC et al
    Defendant.

Case No. 2020 CV 0628

Summons on Complaint

To the following named defendant:
SAMUEL HUWER
CO LEIDOS INC
2745 PENTAGON BOULEVARD
BEAVERCREEK, OH 45431

    You are hereby summoned that a complaint (a copy of which is hereto attached and made a part hereof) has been filed against you in this court by the Plaintiff(s) named herein.

    You are required to serve upon the Plaintiff's attorney, or upon the Plaintiff, if he has no attorney of record, a copy of your answer to the complaint within twenty-eight (28) days after service of this summons upon you, exclusive of the day of service. Said answer must be filed with this court within three days after service on Plaintiff's Attorney.

The name and address of the Plaintiff's Attorney is as follows:
MICHAEL W DEWITT
DEWITT LAW LLC
4200 REGENT STREET SUITE 200
COLUMBUS OH 43219
  Work Phone(614)398-2886 Fax (614)750-1379

    If you fail to appear and defend, judgment by default will be taken against you for the relief demanded in the complaint.

A. J. Williams, Clerk
Greene County Common Pleas Court
45 N. Detroit St.
Xenia, OH 45385

*[signature]*
Deputy Clerk
Dated: December 17, 2020
9590926699042166010228

EXHIBIT A

IN THE COURT OF COMMON PLEAS
GREENE COUNTY, OHIO

SUSAN PETERIE              :
7441 N. U.S. Hwy 68        :   Case No. 2020CV0628
Wilmington, Ohio 45177     :
                           :   Judge
        Plaintiff,         :
                           :   JURY DEMAND ENDORSED
    v.                     :   HEREON
                           :
LEIDOS, INC.               :
11951 Freedom Drive        :        JUDGE
Reston, VA 20190           :      BUCKWALTER
                           :
and                        :
                           :
TIMOTHY HEEG               :
c/o LEIDOS, INC.           :
3745 Pentagon Boulevard    :
Beavercreek, Ohio 45431    :
                           :
and                        :
                           :
SAMUEL HUWER               :
c/o LEIDOS, INC.           :
3745 Pentagon Boulevard    :
Beavercreek, Ohio 45431    :
                           :
        Defendants.        :

FILED 2020 DEC 17 AM 11:13 AJ WILLIAMS COMMON PLEAS COURT GREENE COUNTY, OHIO

## COMPLAINT

Plaintiff Susan Peterie ("Peterie"), by and through her undersigned counsel, herein files the following Complaint against Defendants Leidos, Inc. ("Leidos"), Timothy Heeg ("Heeg") and Samuel Huwer ("Huwer").

1. Plaintiff is a natural person residing in Clinton County, Ohio.

1

EXHIBIT A

2. Upon information and belief, Defendant Leidos is a Delaware corporation with its principal place of business in Reston, Virginia.

3. Upon information belief, Defendant Heeg is an Ohio resident and at all times pertinent hereto, was a Leidos product team leader.

4. Upon information belief, Defendant Huwer is an Ohio resident and at all times pertinent hereto, was a Leidos software development manager who had supervisory authority over both Ms. Peterie and Heeg.

5. At all relevant times, Leidos employed four or more employees within the state of Ohio.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over Leidos because it has a facility in Ohio and regularly transacts business in Ohio.

7. Venue is proper in this Court because the acts and omissions alleged herein took place in Greene County.

## FACTS COMMON TO ALL CLAIMS

8. Ms. Peterie was hired by Leidos in October 2017 and worked at the Leidos facility in Beavercreek, Ohio until she was terminated on February 3, 2020.

9. During her employment at Leidos she was a Software Test Engineer.

10. Ms. Peterie was declared legally blind in August 2018.

11. That blindness, along with a hearing deficiency, constitutes "a physical or mental impairment that substantially limits one or more major life activities."

12. As such, she was disabled as defined by the Americans with Disabilities Act ("ADA")

2

EXHIBIT A

13. In November 2018, one of Ms. Peterie's co-workers moved in with her to help her to and from work.

14. In December 2018, Ms. Peterie met with Huwer, her immediate supervisor, and Santo, Huwer's immediate supervisor to discuss her eyesight issues.

15. From that date until the end of her employment at Leidos, Ms. Peterie faced nearly ant discrimination and harassment based on her disability by Heeg, a team leader and the dual charged with approving her timesheets and Huwer.

16. For example, on numerous occasions, Heeg called her derogatory names during meetings and acted as if he did not believe she really had eyesight and hearing issues.

17. That discrimination was directly related to her disability.

18. In addition, it was clear from early 2018 that members of management in general d Heeg and Huwer in particular — wanted to either terminate Ms. Peterie or get her to quit r own.

19. In February and March 2019, Ms. Peterie started working with Opportunities for ans with Disabilities ("OOD") to receive information and support for her hearing and visual ilities.

20. On April 12, 2019, Ms. Peterie started the process of requesting an accommodation the ADA.

21. The reasonable accommodation she sought was to be able to work from home two ee days per week, based mainly due to the length of her commute from Wilmington to ercreek.

22. In May 2019, Ms. Peterie and her doctors submitted all the paperwork and records sted by the human resources department regarding the ADA accommodation request.

3

EXHIBIT A

23. In July 2019, Ms. Peterie met with Mildred Mejia and Huwer to review the accommodation request.

24. That request was denied, and she was told she could only work from home three days per month.

25. No reasonable explanation for the denial of the accommodation request was given to Ms. Peterie, although it was intimated that she was not senior enough to work from home.

26. After a year and a half near constant harassment by Heeg and Huwer, and the unjustified denial of her ADA accommodation request, Ms. Peterie filed a formal complaint with human resources.

27. Based on that complaint, on July 19, 2019, the HR department started an internal investigation into the ongoing accommodations, harassment and performance review issues addressed above, which included a review of Tim Heeg's and Huwer's behavior.

28. Lisa Coleman, from the HR department, eventually met with Ms. Peterie and told her that Heeg had anger management issues but that Huwer, his direct supervisor, would be addressing those issues with him.

29. To the extent that Huwer ever met with Heeg or attempted to counsel, it had no effect on his behavior other than to make it worse.

30. Heeg's escalated bad conduct was clearly in retaliation for her reporting the harassment.

31. While these issues were taking place, Ms. Peterie also worked with her doctor to get updated medical information to support her request to work from home.

32. On December 10, 2019, Ms. Peterie submitted new ADA accommodation paperwork and notified both Mejia and Huwer that it had been submitted.

EXHIBIT A

33. On January 7, 2020, Huwer requested a meeting with Ms. Peterie, which she assumed was about the ADA request.

34. When she arrived at the meeting, she was told she was going either be laid off or would be demoted to an entry-level position with an approximately $30,000 pay cut, which based on her then annual salary of approximately $93,000 amounted to a nearly 35% pay cut.

35. She was given until January 10, 2020 to make her decision.

36. On January 8th, she sent some personal documents from her Leidos computer to her personal Gmail account, along with some of her job performance records.

37. On January 10th, Ms. Peterie asked for an extension of time to decide so that she discuss the options with a lawyer and Mejia granted an extension of time until January 17th.

38. On that same date, she sent one or two more copies of her own personal files to her personal Gmail account.

39. Also, on January 10th, she sent an email to her group president with a summary of problems that were encountered on a project she was working on.

40. From January 13th – 16th, she worked extra hours so that she could take an extra day off, through January 21st, in conjunction with the Martin Luther King Day holiday.

41. During that week she also had a productive meeting with Kate Sisson, a Leidos workplace relations specialist, regarding the retaliation issues and how she had been treated at Leidos.

42. Soon thereafter, she was told she was under investigation because she sent personal documents on her work computer to her personal Gmail account.

EXHIBIT A

43. On February 3, 2020, she was summoned to HR and was told that she was being terminated, effective immediately, because Leidos claimed she "mishandled protected information."

44. The basis of this dubious claim was the fact that she sent the personal documents addressed above to her personal email account.

45. This was clearly retaliation in direct response to her complaints about being harassed and about not being granted the requested reasonable accommodations to which she was entitled.

46. Since being illegally terminated in retaliation for both complaining about disability discrimination and because she sought ADA accommodations, she has suffered both physically and mentally.

47. As a direct and proximate result of Defendants' illegal conduct described above, Ms. Peterie suffered damages in an amount to be determined at the trial of this matter.

## COUNT I
## DISCRIMINATION AND RETALIATION UNDER
## OHIO REVISED CODE CHAPTER 4112 — ALL DEFENDANTS

48. Plaintiff realleges and restates the facts and allegations above, as if fully rewritten herein.

49. Ms. Peterie was an "employee" as that term is defined in R.C. 4112.

50. Leidos was an "employer" as that term is defined in R.C. 4112.

51. As noted previously, Mr. Peterie is disabled as defined by the ADA.

52. Because Leidos knew Ms. Peterie was disabled and subjected her to the discriminatory treatment described above, she was a member of a protected class under R.C. 4112.

EXHIBIT A

53. At the time she was discharged she was physically able to perform his duties and wise met the requirements of her job and laws pertaining to the relationship between oyer and employee.

54. Ms. Peterie was subjected to the conduct alleged above, including her ultimate nation, because she was disabled.

55. Ms. Peterie was retaliated against, as described above, because of her complaints t Heeg's and Huwer's discriminatory conduct.

56. That retaliation included, among other things, her termination, which is considered dverse employment action" under R.C. 4112.

57. For its violations of R.C. 4112, Leidos is liable to Ms. Peterie for lost pay and fits, compensatory and punitive damages, and attorney fees and costs, in an amount to be mined at trial, plus the equitable remedies of reinstatement and/or front pay.

58. As a direct and proximate cause of Defendants' actions, Ms. Peterie has been iged in an amount more than $25,000, which will be proven at trial.

## COUNT II
## DISCRIMINATION AND RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT — ALL DEFENDANTS

59. Plaintiff realleges and restates the facts and allegations above, as if fully rewritten n.

60. As addressed above, Ms. Petrie requested the reasonable accommodation of ing from home, at first three days per week and later five per week, based on her disability.

61. Leidos's failure to provide these reasonable accommodations, with virtually no ination why such an accommodation was unreasonable, is a violation of the ADA.

7

EXHIBIT A

62. In addition, complaints regarding the failure to provide a reasonable accommodation are considered a "protected activity."

63. Ms. Peterie's complaints to HR about Leidos's failure to provide reasonable accommodations is a protected activity under the Act and any adverse employment action taken as a result of such protected speech constitutes prohibited retaliation.

64. Leidos's termination of Ms. Peterie after her complaints about its failure to provide a reasonable accommodation constitute an adverse employment action.

65. For their discrimination and retaliation under the ADA, Defendants are liable to Ms. Peterie for lost pay an d benefits, compensatory and punitive damages, and attorney fees and costs, in an amount to be determined at trial, plus the equitable remedies of reinstatement and/or front pay.

66. As a direct and proximate cause of Defendants' actions, Ms. Peterie has been damaged in an amount more than $25,000, which will be proven at trial.

EXHIBIT A

WHEREFORE, Mr. Peterie demands the following:

1. As to Counts I and II, lost pay and benefits, compensatory and punitive damages, and attorney fees and costs, in an amount to be determined at trial, plus the equitable remedies of reinstatement and/or front pay.

Respectfully submitted.

DEWITT LAW, LLC

*[signature]*

Michael W. DeWitt (0066896)
4200 Regent Street
Suite 200
Columbus, Ohio 43219
(614) 398-2886
(614) 370-4552
(614) 750-1379 (facsimile)
mdewitt@dewittlawco.com
*Attorney for Plaintiff*

**JURY DEMAND**

Plaintiff demands that a jury decide all claims in this matter triable to a jury.

*[signature]*

Michael W. DeWitt

9

EXHIBIT A