IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SUSAN PETERIE,                    :

       Plaintiff,

                       Case No. 3:21-cv-042

    v.                            :

LEIDOS, INC., et al.,                    JUDGE WALTER H. RICE

       Defendants.              :

---

DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (DOC. #16); JUDGMENT TO ENTER IN FAVOR OF
DEFENDANTS AND AGAINST PLAINTIFF; TERMINATION ENTRY

---

In October 2017, Plaintiff, Susan Peterie ("Peterie" or "Plaintiff"), was hired by Defendant, Leidos, Inc. ("Leidos"), as a Software Test Engineer to work in Beavercreek, Ohio. Following her termination in February 2020, she sued Leidos, her team leader, Timothy Heeg, and her former immediate supervisor, Sam Huwer (collectively "Defendants"), alleging disability discrimination, harassment, failure to accommodate and retaliation under both state and federal law

This matter is before the Court pursuant to a Motion for Summary Judgment ("Motion") filed by Defendants. Doc. #16. Responsive pleadings, Doc. ##21 and 22, have been filed. The Court, finding no genuine issue of material fact, sustains the Motion in its entirety.

## I.  Background Facts

Leidos is a defense, aviation, information technology and biomedical research company.  Doc. #16, PageID#441.  In October 2017, it hired Peterie as a Software Test Engineer to work in Beavercreek, Ohio, on the Advanced Intelligence Multimedia Exploitation Suite ("AIMES") contract. Doc. #22, PageID#662.  During her interview with Leidos, she told them she was unable to drive at night or in the rain due to poor eyesight. Doc. #14, PageID#85.

Peterie was assigned to a product team consisting of approximately ten people and was responsible for designing, developing and implementing the test automation framework of the AIMES software.  Doc. #14-1, PageID##83 and 85. Her immediate supervisor was Defendant, Sam Huwer ("Huwer").  Defendant, Timothy Heeg ("Heeg"), was her team leader and a Senior Software Engineer. Doc. #14-1, PageID#394; Doc. #15-1, PageID#393; Doc. #22, PageID#662.   Within a month or two of being hired, Peterie began working with a "user interface tool" known as Ranorex and worked with this "off the shelf tool" through her termination on February 3, 2020.  *Id.*, PageID##83, 85, 91. There was no one on her team who knew more about this user interface tool than she did. *Id.*, PageID##85-86.

 Peterie suffered from "a form of Usher's syndrome, an inherited disorder which causes retinal degeneration and hearing loss." Doc. #16-1, PageID#457.  By August 2018, she was declared legally blind and unable to drive. Doc. #22, PageID#662.  In November 2018, a co-worker moved in with her to take her to and

2

from work. *Id.* In December 2018, Peterie met with Huwer and his immediate supervisor to discuss her eyesight issues and afterwards she contends she "faced nearly constant discrimination and harassment" from him and from Heeg. *Id.* She was told by coworkers that Heeg called her derogatory names during team meetings and would act as if he did not believe she had vision and hearing issues. *Id.*

Because of Peterie's eyesight and inability to drive to and from work, she requested as an accommodation that she be permitted to work from home two or three days per week. *Id.*, PageID#663; Doc. #16-4, PageID#467. In May 2019, she submitted "paperwork and records" to the Human Resources Department ("HR") and included a letter from Roanne E. Flom, O.D., a doctor in the College of Optometry, Low Vision Rehabilitation Service, at The Ohio State University. Doc. 16-1, PageID##457-458. Dr. Flom stated that because of Plaintiff's peripheral vision loss, she was unable to drive and "allowances for occasional work from home might be considered a reasonable accommodation." *Id.* Dr. Flom also stated that further accommodations to support Peterie's work at a computer or with a hardcopy "might include a range of fairly simple adjustments to lighting, contrast, and magnification, as well as orientation aids, such as line guides. This might also include accessibility software to further enhance her efficiency in reading computer monitors." *Id.*

3

In July 2019, Peterie met with Huwer and Mildred Mejia ("Meija") of Leidos's HR department to review her accommodation request. Doc. #22, PageID#663, Doc. #16-4, PageID#467. Leidos agreed to permit Plaintiff

> to work from home for up to three days each month when she could not find alternative transportation to work, provided she notified [Huwer] 24 hours in advance, [participate] in team meetings by phone and that she [remain] available each weekday and did not 'flex' her hours in a way that caused her not to be available during [the] core hours of [the] weekdays.

Doc. #16-4, PageID#467. Plaintiff contends that Leidos gave her no "reasonable explanation" as to why she could not work from home two to three days a week and could only do so two to three days a month. She testified the company "intimated" to her that she "was not senior enough to work from home and the company could not function with people working remotely." Doc. #22, PageID#663.

After her accommodation request to work from home two to three days a week was denied, Peterie filed a formal complaint with HR. *Id.* Her complaint concerned the "year and a half of near constant harassment by Heeg and Huwer," the denial of her accommodation request and her performance review. *Id.* On July 19, 2019, Leidos's HR Department began an internal investigation of these issues. *Id.* Plaintiff was later told by the department that Heeg "had anger management issues" and Huwer would address this situation with him. *Id.* Plaintiff, however, saw no improvement in Heeg's conduct and has alleged that

4

his behavior only worsened and was in retaliation for her reporting the alleged harassment. *Id.*

On December 10, 2019, Peterie notified both Huwer and Mejia that she had submitted a second accommodation request to work from home. *Id.* On January 7, 2020, she was told to attend a meeting which she believed was scheduled in response to that second request. Instead, Huwer told her that effective January 24, 2020, Leidos had decided to change from Ranorex to TestComplete, a different user interface tool. Doc. #16-4, PageID#467. Her position as Software Test Engineer would be eliminated and not filled. Doc. #16-4, PageID#467; Doc. #15-1, PageID#405. Plaintiff testified that changing to TestComplete could be considered a "business decision" and if Leidos determined it was easier to use than Ranorex, she could not confirm or deny their conclusion. Doc. #14-1, PageID#102. She was offered the position of Junior Software Development Engineer which paid approximately 35% less than her current position. *Id.*; Doc. #22, PageID#664. She was also told she needed to tell Leidos by January 10, 2020, if she would accept the new position. Doc. #22, PageID#664. Her second accommodation request was never addressed. Doc. #16-4, PageID#467.

On January 8 and 10, 2020, Plaintiff sent personal documents from her Leidos computer to her personal email account including some of her job performance records. Doc. #22, PageID#664. She testified she sent the emails because she was trying to "capture" her work, believed she was only sending personal and non-proprietary information to her personal email account and did

not intend to have any Leidos proprietary information in her possession. Doc. #14-1, PageID#92, Doc. #22, PageID#664. Plaintiff knew that sending confidential work information to her personal email account was a violation of the Leidos security policy. Doc. #14-1, PageID#95.

On January 10, 2020, Leidos gave Plaintiff an extension of time to January 17, 2020, so she could discuss with her lawyer the elimination of her job as Software Test Engineer and the offer to work as Junior Software Development Engineer. Doc. #22, PageID#664. During the week of January 13, 2020, she met with a Leidos workplace relations specialist concerning her claims of harassment and retaliation. *Id.* Shortly after this meeting, Plaintiff was placed on unpaid administrative leave and was told she was under investigation for the transfer of emails from her Leidos email account to her personal email account. Doc. #14-1, PageID#106; Doc. #22, PageID#664. On February 3, 2020, Leidos ordered Plaintiff to delete from her personal email account certain information that it deemed proprietary. Peterie deleted this information since she did not intend to have any of Leidos's proprietary information. She was thereafter terminated for violating company policy concerning the "Mishandling of Protected Information," a "violation of the Leidos Policy LP-IT-1: Information Systems Security Protection, and the Leidos Code of Conduct." Doc. #14-1, PageID##91 and 140.

Plaintiff filed suit in state court on December 17, 2000, against Leidos, Huwer and Heeg alleging disability discrimination, harassment, failure to accommodate and retaliation in violation of Ohio Revised Code Chapter 4112 and

6

the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq.

Defendants filed a timely Notice of Removal pursuant to 28 U.S.C. §§1441 and

1446, filed their Answer denying liability and have now moved for summary

judgment on all claims. Doc. #16.

## II. Motion for Summary Judgment

Summary judgment must be entered "against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex*

*Corp.v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the

initial responsibility of informing the court of the basis for its motion and

identifying those portions of the record which it believes demonstrate the absence

of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930

F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party

must present evidence that creates a genuine issue of material fact making it

necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61

F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 250 (1986). Once the burden of production has so shifted, the party opposing

summary judgment cannot rest on its pleadings or merely reassert its previous

allegations. It is not sufficient to "simply show that there is some metaphysical

doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure* Civil 3d § 2726 (1998). In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). If it so

chooses, however, the Court may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

### III. Legal Analysis

#### A. Introduction

Plaintiff's Complaint consists of two counts. In Count One she asserts a violation of Ohio Revised Code § 4112 for disability discrimination and retaliation. She contends she was terminated due to her disability, retaliated against because of the complaints she made to HR about Heeg and Huwer's discriminatory conduct and that the retaliation included her termination of employment. Doc. #1-1, PageID#14. In Count Two Peterie alleges disability discrimination, failure to accommodate and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. She alleges she was disabled, requested two reasonable accommodations from Leidos that consisted of working from home for three days a week, and later five days a week, and that Defendant violated the ADA by providing her with "virtually no explanation why such an accommodation was unreasonable." *Id.*, PageID#14-15. She further asserts the complaints she made to Leidos's HR Department regarding the failure to provide a reasonable accommodation were protected activity and that her termination was a result of these complaints. *Id.*

Defendants argue in their Motion that Plaintiff cannot establish a *prima facie* case of disability discrimination under state law, because she cannot show

9

that her termination was based, in part, on her disability.  They also assert that no *prima facie* case exists under the ADA for disability discrimination since her position as Software Design Engineer was eliminated due to Leidos's business decision to change from Ranorex to a different user interface tool, TestComplete. They further contend Peterie has failed to identify any specific behavior or conduct of harassment attributable to Heeg and Huwer, and that no *prima facie* case of retaliation exists due to a lack of causal connection between her alleged failure to obtain a reasonable accommodation in May 2019 and her termination in February 2020.  Finally, Defendants argue that, as a matter of law, she has not stated a failure to accommodate claim.

### A. Disability Discrimination Claims under State and Federal Law – Counts I and II

Defendants move for summary judgment on Plaintiff's claims for disability discrimination in Count I, under Ohio Revised Code Chapter 4112, and in Count II, under the ADA.  Discriminating against a qualified individual on the basis of a disability is prohibited under the ADA and Ohio state law. *See* Ohio Revised Code § 4112.02(A)[1]; 42 U.S.C. § 12112(a).[2]  An analysis of claims made pursuant to the

---

[1] Ohio Revised Code § 4112.02(A) makes it unlawful for an employer, because of an individual's disability, "to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

[2] 42 U.S.C. § 12112(a) states "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring,

ADA applies to claims made pursuant to Ohio Revised Code Chapter 4112. *Jakubowski v Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir. 2010) (citing *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 872 (6th Cir.2007) (applying Americans with Disabilities Act analysis to claims made pursuant to Ohio Revised Code § 4112.02). The parties agree that no direct evidence of disability discrimination exists. Accordingly, the Court applies, for both the state and federal claims of disability discrimination, the burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973) and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981); *Ames v. Ohio Dep't of Rehab. & Corr.*, 23 N.E.3d 162, 2014–Ohio–4774 (Ohio Ct. App. 2014) (applying *McDonnell Douglas–Burdine* to a disability discrimination claim brought under Ohio Revised Code § 4112.02(A)).

Under this framework, Peterie must first establish a *prima facie* case of disability discrimination. If a *prima facie* case is established, the burden of production then shifts to Leidos "to demonstrate that there was a legitimate, non[-]discriminatory reason for the adverse employment action." *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 395 (6th Cir. 2017). If it succeeds in demonstrating this, Peterie must show that the reason given by Leidos was pretextual. *Id.* The ultimate burden of persuasion of discrimination remains at all times with the plaintiff. *Burdine at 253.*

---

advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

Under Ohio Revised Code § 4112.02, a *prima facie* case for disability discrimination is established by showing that (1) the plaintiff was disabled; (2) the employer took an adverse employment action against her, at least in part, because of her disability; and (3) she could safely and substantially perform the essential functions of the job in question despite her disability. *Blank v. Nationwide Corporation*, No. 20-3969, 2021 WL 3469187, *7 (6th Cir. Aug. 6, 2021) (setting forth disability discrimination claim under Ohio Revised Code § 4112) (quoting *Stewart v. Bear Mgmt., Inc.*, 98 N.E.3d 900, 904 (Ohio Ct. App. 2017) (citing *Hood v. Diamond Prods., Inc.*, 74 Ohio St.3d 298, 658 N.E.2d 738, 741 (1996)).

A *prima facie* case for disability discrimination under the ADA is established by showing that (1) the plaintiff has a disability; (2) she is "otherwise qualified for the position, with or without reasonable accommodation;" (3) she "suffered an adverse employment decision;" (4) her employer "knew or had reason to know" of her disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011); *Schwendeman v. Marietta City Sch.*, 436 F. Supp. 3d 1045, 1059–60 (S.D. Ohio 2020) (Sargus, C.J.), aff'd, 2020 WL 7711327 (6th Cir. Dec. 14, 2020) (citing *Whitfield*, 639 F.3d at 259).

Defendants do not dispute that Plaintiff was disabled and could safely and substantially perform the essential functions of the job despite her disability.

12

They argue, however, that Plaintiff has not established a *prima facie* case for disability discrimination under either § 4112(A) or the ADA.

Under § 4112(A), Defendants contend Peterie has not established a *prima facie* case since she presented no evidence that any part of the decision to terminate her was based on her disability. They assert the evidence shows her termination was for "Mishandling of Protected Information" which occurred when she transferred Leidos's information from her work email account to her personal email account, a violation of Leidos Policy LP-IT-1: Information Systems Security Protection and the Leidos Code of Conduct. Doc. #14-1, PageID#140.

Defendants also argue that Plaintiff failed to establish a *prima facie* case for disability discrimination under the ADA, because her position as a Software Design Engineer was eliminated and no replacement was hired. Doc. #16-4, PageID##466-469;[3] Doc. #15-1, PageID#405.

Viewing the facts in a light most favorable to Plaintiff, the Court finds that Plaintiff has established a *prima facie* claim for disability discrimination under Ohio Revised Code § 4112 (A). Plaintiff was legally blind and was able to safely and substantially perform the essential functions of the job despite her disability. She testified she told Leidos when she was hired of her inability to drive at night or in the rain, made a complaint to the HR Department regarding Defendants'

---

[3] The Declaration of Samuel J. Huwer, Doc. #16-4, PageID##166-469, includes a "Layoff Matrix" as Exhibit 1. *Id.*, PageID#467. Because this exhibit is not properly authenticated as a record of regularly conducted activity pursuant to Evid. R. 803(6), it is inadmissible hearsay and the Court will not consider it in its Decision and Entry.

denial of her disability accommodations, harassment and her performance review[4] and, shortly before her termination, met with a Leidos workplace specialist regarding "the retaliation issues" and how she had been treated. Doc. #22, PageID##663-664.

Plaintiff, however, has not established a *prima facie* case under the ADA for disability discrimination. There is no dispute that there is evidence that she was disabled, otherwise qualified for the position, was terminated and that Leidos knew of her disability. She has not, however, established that the position of Junior Software Development Engineer remained open while Leidos sought other applicants or that she was replaced.[5]

Because the Court finds that Plaintiff has met her initial burden to establish a *prima facie* case of disability discrimination under Ohio Revised Code § 4112 (A), the burden of production shifts to Defendants to show a "legitimate, non[-] discriminatory reason" for her termination. *Williams*, 847 F.3d at 395. Defendants "must clearly set forth, through the introduction of admissible evidence, reasons for [their] actions which, if believed by the trier of fact, would support a finding

_____

[4] Although referenced in Plaintiff's Declaration, Doc. #22, Peterie does not provide any details concerning her performance review.

[5] Defendants mistakenly argue that because Plaintiff's job as a Software Test Engineer was eliminated and not filled, she cannot prove a *prima facie* case. Peterie, however, testified that the elimination of this position was a business decision necessitated by a change in the software testing tools. Doc. #14-1, PageID#102. Instead, she asserts that she was unlawfully terminated due to disability discrimination from the only position offered to her, that of Junior Software Development Engineer. Doc. #22, PageID#664.

that unlawful discrimination was not the cause of the employment decision." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).[6]

The Court finds that Defendants have met this burden. The Declaration of Nicole Dujka, a Digital Forensics Analyst in Leidos Computer Security Incident Response Team, states that on January 8 and 10, 2020, Plaintiff transferred 382 emails, calendar entries and files from her work email account to her personal email account. Doc. #16-5, Page ID#549-588. The information Peterie sent to her personal email account consisted of both personal emails and emails marked "Leidos Proprietary." Doc. #16-5, PageID##554-588. Five of these proprietary files were marked "Legally Privileged and Confidential." *Id*. The transferring of this information was a violation of Leidos Policy LP-IT-1: Information Systems Security Protection and the Leidos Code of Conduct. As stated in Leidos Policy LP-IT-1, a violation of policy "may result in disciplinary action, including. . .termination of employment." Doc. 16-4, PageID##468 and 496-503. Peterie admitted that she had access to this policy and knew that Leidos took confidential information and security issues seriously. Doc. #14-1, PageID##94 and 97. Under *McDonnell Douglas–Burdine,* Defendants have articulated a legitimate, non-discriminatory reason for terminating Plaintiff given that Leidos's Mishandling of Protected

---

[6] Because Ohio Revised Code § 4112.02 "mirrors the ADA," the Court will apply the ADA's legal standard to this statute. *See Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 418 (6th Cir. 2004); *Columbus Civ. Serv. Comm'n. v. McGlone*, 82 Ohio St.3d 569, 697 N.E.2d 204, 206 (1998) (citing *Little Forest Med. Ctr. v. Ohio C.R. Comm'n*, 61 Ohio St.3d 607, 575 N.E.2d 1164 (1991)).

Information policy was known to her. Because "[V]iolations of express company policy are legitimate, non-discriminatory reasons for taking adverse employment action," *Schwendeman*, 436 F. Supp. 3d at 1061, (citing *Blackshear v. Interstate Brands Corp.*, 495 F. App'x 613, 618 (6th Cir. 2012)), the burden shifts to Plaintiff to prove that the proffered reason is pretextual.

At the summary judgment stage, Plaintiff's burden of showing that Leidos's reason is pretextual is satisfied "when [s]he produces evidence sufficient that a reasonable finder of fact could reject the employer's proffered reason." *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 515 (6th Cir. 2021) (internal quotation and alteration omitted). Plaintiffs ordinarily show pretext "by showing that the proffered reason[ ] (1) had no basis in fact; (2) was insufficient motivation for the employment action; or (3) did not actually motivate the adverse employment action." *Id.* (quoting *Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 790–91 (6th Cir. 2006)); *Manzer v. Diamond Shamrock Chemicals*, 29 F.3d 1078, 1084 (6th Cir. 1994), overruled on other grounds by *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) (in order to successfully challenge an employer's credibility of proffered explanations and establish pretext, a plaintiff must introduce additional evidence of discrimination and not simply rely on his *prima facie* case).

Here, Plaintiff merely argues that there are disputed facts as to whether she was terminated for a legitimate, non-discriminatory reason. She contends she did not "believe" she sent any Leidos proprietary information to her personal email account. Instead, she asserts she "believed" she was "only sending personal

information and non-proprietary information to include" on her resume if she did

not accept the lower paying position of Junior Software Development Engineer.

Doc. #22, PageID#664. Plaintiff's "belief," however, is not enough to establish

pretext.  She offers no facts disputing the declaration of Leidos's Digital Forensics

Analyst that there were both personal emails and emails marked "Leidos

Proprietary" and that five of these proprietary files were marked "Legally

Privileged and Confidential."  She also does not dispute that the Leidos Policy LP-

IT-1 stated that a violation of the policy may result in termination. Doc. 16-4,

PageID##468 and 496-503; Doc. #16-5, PageID##554-588.  Without such evidence,

no "reasonable finder of fact," *Briggs*, 11 F.4th at 515, could reject Leidos's

proffered reason for her termination and find that it was pretextual.

　　　For the reasons set forth above, the Court finds there is no genuine dispute

of material fact. Defendants' Motion for Summary Judgment for disability

discrimination under Ohio Revised Code § 4112(A), Count I, and for disability

discrimination under the ADA, Count II, is sustained.

### B. Disability Discrimination Based on Harassment from Huwer and Heeg – Count I

　　　Plaintiff alleges in her Response and Declaration, Doc. #22, that she learned

from co-workers that Heeg called her derogatory names during team meetings

and acted like he did not believe she had medical issues concerning her eyesight

and hearing. *Id.*, PageID#662.  She also states in her Declaration that "it was clear

in 2019" that Huwer and Heeg wanted either to terminate her or for her to quit. *Id.*, PageID#663. She also refers to "constant harassment" from both of these Defendants and states that Heeg's "escalated bad conduct was clearly in retaliation" for her reporting of his alleged harassment. *Id.*

To survive a motion for summary judgment, a plaintiff must demonstrate that the harassment was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment" that would be considered "hostile or abusive" by a "reasonable person." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). The Court determines objectively severe or pervasive harassment by considering a non-exhaustive list of factors, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23.

Plaintiff has failed to set forth any facts in support of her allegations that she suffered "constant harassment" from Heeg and Huwer, what derogatory names she was allegedly called or what "bad conduct" Heeg exhibited that was allegedly in retaliation for her reporting his conduct to the HR Department. Because of this lack of evidence, Peterie cannot show that her alleged harassment was "sufficiently severe or pervasive to alter the conditions of the employment and create an abusive working environment," so that it would be considered "hostile or abusive" by a "reasonable person."

18

Because the Court finds there is no genuine dispute of material fact, Defendants' Motion for Summary Judgment on Plaintiff's claim of harassment due to her disability is sustained.

### C. Failure to Accommodate in Violation of the ADA – Count II

Count II of the Complaint alleges that Leidos violated the ADA because it denied her requests for "reasonable accommodations," provided "virtually no explanation" as to why her requests were unreasonable and terminated her after she complained about the failure to provide her with these accommodations. Doc. #1-1, PageID##13-14.   Her first request, to work from home three days a week, was made in July 2019 and, in response, Leidos agreed she could work from home three days a month. Doc. #22, PageID#663.  Leidos did not respond to Plaintiff's second request, submitted December 10, 2019, since she was told on January 7, 2020, that her position was being eliminated and she would "either be laid off or would be demoted to an entry-level position" and was ultimately terminated on February 3, 2020.  *Id.*, PageID#664.  Importantly, Plaintiff stated, following her first accommodation request, that "[her request] is not a medical condition that requires me to work from home, it is the availability of transportation." Doc. #16-2, PageID#461.

To determine whether a violation under the ADA for failure to accommodate has occurred, the Sixth Circuit applies the direct evidence test. *Blanchet v. Charter Communications*, LLC, 27 Fed. 4th 1221, 1227 (2022) ("Since

failure to accommodate is expressly listed in the Act's definition of disability

discrimination, see 42 U.S.C. § 12112(b)(5)(A), 'claims premised upon an

employer's failure to offer a reasonable accommodation necessarily involve direct

evidence (the failure to accommodate) of discrimination.'"(citation omitted)).  To

establish a *prima facie* case under the direct evidence test, Peterie need only show

that she is disabled[7] and is "'otherwise qualified' for the position despite. . . her

disability." *Id.* at 1228 (citing *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 869

(6th Cir. 2007).  Leidos "'then bears the burden of proving that a challenged job

criterion is essential, and[,] therefore[,] a business necessity, or that a proposed

accommodation will impose an undue hardship upon' the company." *Id.*  Because

Defendants do not dispute that Plaintiff is disabled because she is legally blind,

she must show that she is "otherwise qualified."

To satisfy the "otherwise qualified" burden, a plaintiff "must show that 'she

is otherwise qualified' for the position despite. . . her disability: (a) without

accommodation from the employer; (b) with an alleged 'essential' job

requirement eliminated; or (c) with a proposed reasonable accommodation." *Id.*

*Id.*, at 1228 (citing *Kleiber*, 485 F.3d at 869.  The plaintiff's burden of establishing a

---

[7] The ADA defines disability as including "a physical or mental impairment that substantially limits one or more major life activities" with a major life activity defined as including, but not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102 (1) (A) and (2).

*prima facie* case is not an onerous one. *Hostettler v. College of Wooster*, 895 F.3d

844, 855 (6th Cir. 2018).

By granting Plaintiff an accommodation of three days per month, albeit far

less than her request of three days per week, Leidos determined that Plaintiff was

disabled and otherwise qualified for the position of Software Design Engineer,

with or without reasonable accommodation. Accordingly, Plaintiff satisfied her

initial burden of establishing a *prima facie* case. Leidos, however, offers no

evidence that Peterie's proposed accommodation of working remote three days a

week imposes "an undue hardship upon the company," that her presence every

workday in a month, other than three, is "essential" and a "business necessity."

*Blanchett*, 27 F.4th at 1228. Although it argues that Courts in the Sixth Circuit

"presume on-site attendance is an essential job requirement" and cites *E.E.O.C. v*

*Ford Motor Co.*, 782 F.3d 753, 761 (6th Cir. 2015) (*en banc*) and *Tchankpa v.*

*Ascena Retail Group, Inc.*, 951 F.3d 805 (6th Cir. 2020) as support, these cases are

readily distinguishable.

In *E.E.O.C. v Ford Motor Co.*, the Sixth Circuit noted that the plaintiff was a

resale buyer and her position "required teamwork, meetings with suppliers and

stampers, and on-site 'availability to participate in . . .face-to-face interactions.'"

*Id.*, at 764. Similarly, in *Tchankpa*, 951 F.3d 805 (6th Cir. 2020), although the Court

noted that "an accommodation is likely unreasonable if it frustrates attendance,"

and cited *E.E.O.C. v. Ford Motor Co.*, *Id.*, at 813, the plaintiff 's ADA claim for

failure to accommodate was dismissed for failing to show working from home

related to his disability, not providing medical information to his employer and resigning before agreement reached on ultimate accommodation.

Although Leidos has not shown that Plaintiff's initial proposed accommodation to work from home three days a week was an "undue hardship," her attendance five days a week "essential" or a "business necessity," the Court does find that Plaintiff's request is not reasonable because it is unrelated to her medical condition and essential job function.

In *Regan v. Faurecia Auto Seating*, 679 F.3d 475 (6th Cir. 2012) the plaintiff, a narcoleptic, requested an accommodation to work earlier hours. Although she failed to produce evidence that traffic was lighter during those hours, the Sixth Circuit noted that "[T]hough this Circuit has not yet decided this precise issue, many courts have found that the Americans with Disabilities Act does not require an employer to accommodate an employee's commute." *Id.*, at 480. The Court ultimately held that "the ADA 'does not require [the employer] to accommodate Regan's request for a commute during more convenient hours' and agreed that, '[w]hile an employer is required to provide reasonable accommodations that eliminate barriers in the work environment, an employer is not required to eliminate those barriers which exist outside the work environment.'" *Id.* (second passage quoting *Salmon v. Dade Cnty. Sch. Bd.*, 4 F.Supp.2d 1157, 1163 (S.D. Fla. 1998)). Similarly, in *Zaffino v. Metro Govt. of Nashville & Davidson Cty., Tenn.*, 688 Fed. Appx. 356 (6th Cir. 2017) the Court found an employee's request not to be transferred to a different school and remain closer to her medical providers

and avoid the "stress of change," an unreasonable accommodation. "We emphasize that the ADA does not require an employer to make accommodations just because they might be in an individual's interest—it requires employers to make reasonable accommodations that enable a disabled employee to perform the essential functions of a job she's otherwise qualified for." *Id.* at 359.[8]

Accordingly, the Court finds that there is no genuine issue of material fact and that Leidos is entitled to judgment as a matter of law on Plaintiff's claim for failure to accommodate under the ADA in Count II of the Complaint.

### D. Retaliation Under State and Federal Law – Count I and Count II

Plaintiff alleges claims of retaliation under Ohio Revised Code § 4112.02 in Count I and under the ADA in Count II. Like Plaintiff's claims of discrimination under state law and federal law, because her claims of retaliation are based on indirect evidence, they are analyzed under the *McDonnell-Douglas* and *Burdine* burden-shifting paradigm. *Kirilenko-Ison v. Bd. of Educ. Of Danville Indep. Sch.,* 974 F.3d 652, 661 (6th Cir. 2020). For her claim of retaliation, Peterie must demonstrate a *prima facie* case by showing that (1) she engaged in protected

---

[8] Plaintiff argues that the global pandemic of 2020 and employer's permission and indeed encouragement of their employees to work remotely is evidence of the reasonableness of her request. The EEOC, however, has stated that "telework" under these, hopefully, unusual circumstances does not mean that it is "always a feasible accommodation, or that it does not pose an undue hardship." "Ask EEOC" Webinar (transcript available at https://www.eeoc.gov/transcript-march-27-2020-outreach-webinar).

activity under the ADA; (2) the defendant knew of the protected activity; (3) the

defendant took an adverse action against the plaintiff; and (4) there was a causal

connection between the adverse action and the plaintiff's protected activity. *Id*.

Her burden of establishing a *prima facie* case in a retaliation action "is not

onerous and is easily met." *Id*. (quotation omitted). If a *prima facie* case is shown,

the burden of production shifts to the defendant to show "a legitimate, non-

discriminatory basis" for the adverse action, and if it does so, the plaintiff must

then show, by a preponderance of the evidence, that the defendant's reasons

were a pretext for the retaliation. *Id*. (quotation omitted).

Peterie argues she was retaliated against following her complaints

concerning Heeg's treatment of her and a subsequent investigation by Leidos.

According to her Declaration, Leidos's investigation into Plaintiff's complaints

against Heeg began on July 19, 2019, approximately six months before her

termination. Doc. #22, PageID#663. She submitted her second accommodation

request on December 10, 2019. *Id*. Although this is close enough in time to her

termination in February 2020 for Plaintiff to satisfy her burden of establishing a

*prima facie* case of retaliation, Leidos has shown a legitimate, non-discriminatory

basis for her termination as a result of her transfer of certain work emails to her

personal email account in violation of Leidos's Mishandling of Protected

Information policy and Code of Conduct. Peterie, however, has presented no

genuine issue of material fact that her termination was pretextual and only asserts

that any transfer of such items was not intentional.

24

Accordingly, Leidos's Motion for Summary Judgment on Plaintiff's claim for retaliation under Ohio Revised Code § 4112.02 and under the ADA is sustained.

## IV.    Conclusion

For the reasons set forth above, Defendant's Motion for Summary Judgment, Doc. #16, is SUSTAINED.

Judgment shall be entered in favor of Defendants, Leidos, Inc., Timothy Heeg and Sam Huwer and against Plaintiff, Susan Peterie.

The captioned case is hereby terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division at Dayton.

Date: September 29, 2022

WALTER H. RICE
UNITED STATES DISTRICT JUDGE